**In the Matter of Donald WILLIAMS (and) Regina Williams, Debtors.**

**George W. LEDFORD, Trustee in Bankruptcy, 15 W. National Road, Englewood, Ohio 45322, Plaintiff,**

v.

**SEARS, ROEBUCK & COMPANY, 422 Dayton Mall, Dayton, Ohio 45459, Defendant.**

Bankruptcy No. 3–80–00126.
Adv. No. 3–80–0190.

United States Bankruptcy Court,
S. D. Ohio, W. D.

Aug. 26, 1980.

Ronald E. Reichard, Dayton, Ohio, for Sears.

Clifton E. Plattenburg, Dayton, Ohio, for debtor.

George E. Ledford, Englewood, Ohio, trustee–plaintiff.

DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court upon the plaintiff trustee's complaint to avoid a pref-

erence made by the above debtor to the defendant, Sears, Roebuck & Company. The parties have agreed there are no factual issues in dispute and have submitted the matter to the Court on stipulations of fact in the pretrial order and memoranda of statutory law, citing no case precedents on the issues raised.

On November 12, 1977, Donald Williams, the within debtor, purchased a fence from Sears, Roebuck & Co., for $865.00 plus an installation charge of $150.45. Defendant's Exhibit 1 indicates the installation charge was not separately included in the debtor's account. Exhibit 2 shows the debtor made a $100.00 deposit on the fence leaving the balance of the account (after the debtor's first $28.00 payment made January 12, 1978) at $737.00. A security interest was perfected for the amount of $765.00.

The debtors continued to make regular payments amounting to approximately $28.00 per month until August, 1979. In August, the debtors paid Sears $100.00 on their account and in September the debtors paid $267.18. The debtors made no further payments to Sears until January 2, 1980, when they paid $264.83 on the account and January 3, 1980 when they paid $80.00, the remaining balance due; and Sears released the security interest on the fence. During the above repayment period, the debtors purchased 5 items on their account, in addition to the fence, totalling $312.83. Monthly finance charges were added to the balance carried for both the fence and the subsequent purchases, not segregated.

The debtors filed a petition in bankruptcy on January 22, 1980. They did not list the defendant as a creditor.

The trustee contends that the payments to Sears on January 2, and 3, 1980, are voidable preferences under 11 U.S.C. § 547(b). The record establishes that the debtors paid their money directly to Sears within 90 days prior to the date they filed their petition for relief with this Court. Defendant's Exhibit 1 evidences that the subject payments were made on an antecedent debt. Further, the creditor has not rebutted the presumption that the debtors were insolvent at the time of these payments. Since the defendant was not listed as a creditor in the bankruptcy case, clearly it received more than it would have received if the transfer had not been made. *See 11 U.S.C. § 547(b)(1) through (5).* Defendant does not deny this fact and the fact that any dividend to unsecured creditors will be nominal, at best.

Sears contends that the transfer meets the provisions of 11 U.S.C. § 574(c)(2) and, therefore, is an exception to the preference rule. The defendant argues in its memorandum that "[d]uring the ordinary course of affairs, the debtors, as the payment history reflects, regularly paid this account down . . . It was part of the regular course of business or financial affairs of these parties for the debtors to pay against their SEARS charge account. The court should not say that the payments made in January of 1980 were out of the ordinary course of affairs since the court would be holding that people who otherwise paid their debts were acting extraordinarily when they paid their debts 'off'." (Defendant's Memorandum at p. 2).

Unfortunately, such is exactly the thrust of a voidable preference and the factual situation existing in this case. The payment history shows that from November, 1977, the inception of the account, until January 2, 1980, the debtors never paid their account in full. The first time the account balance was zero was January 3, 1980, nineteen days before they filed for bankruptcy. The account payment history also shows that the debtors' usual rate of payment was $28.00 per month. In some months, they made payments of $56.00 or $50.00 when there had been no payment made the previous month. Thus, payments of $264.83 and $80.00, for a total of $344.83 in one month, (for the purpose of paying the account in full and ahead of schedule) can hardly be said to follow the ordinary course of repayment established between these parties during the long existence of the account.

Sears further argues that the debtors paid the amount in question within 45 days of November 17, 1979, the date the latest charge was incurred. The facts demonstrate that the payment on January 2, 1980, did fall within the time limit set in 11 U.S.C. § 547(c)(2)(B) according to the following calculation:

The debtors purchased an item for $42.84 on November 17, 1979; excluding November 17 and beginning with November 18, 45 days hence brings us to January 1, 1980; since January 1 is a legal holiday, New Year's Day, we can advance to the next day (January 2, 1980) as the 45th day of the period, although the payment on January 3 of $80.00 was made outside this period.

Notwithstanding the above conjectural use of the 45-day period, we find that the payment in question does not meet the § 547(c)(2)(B) requirement because of the requirements of Ohio Revised Code § 1317.-071, which provides in pertinent part, that

[p]ayments received by the seller upon a revolving charge account are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been applied first to the payment of credit service charges in the order of their entry to the account and then to the payment of debts in the order in which the entries to the account showing the debts were made.

Paragraph 1.B(7) of the Sears Charge Security Agreement acknowledges this statutory requirement by the terms that "Sears shall retain title to merchandise purchased under this agreement until paid in full. Each payment shall be applied to merchandise and services as follows:

first to unpaid FINANCE CHARGE: then, as to items purchased on different dates, the first purchase shall be deemed first paid; as to items purchased on the same date, the lowest priced shall be deemed first paid."

Accordingly, we hold that the payment made on January 2, 1980, should have been applied to the balance due on the fence before the balance due on the items pur-chased on March 9, 1979, June 3, 1979, August 15, 1979 and October 10, 1979. Thus, the purchase of November 17 would not have been paid until the debtors' final payment, made January 3, 1980, outside the 45 day period. Even assuming *arguendo* that the January 3 payment could have been applied to the $42.84 purchase of November 17, we would still hold that the remaining $301.99 would be subject to voidance by the trustee, plus finance charges on the other purchases.

■ The defendant has pleaded in the alternative that if the Court decides, as we have, that the payment is voidable, the lien should be reinstated on the fence because the defendant erroneously released the lien believing the account was paid–in–full thereby obviating the need for a security interest. We refer again to the language of Ohio Revised Code § 1317.071 and paragraph 1.B(7) of the security agreement pertaining to the fence. By operation thereof, the fence was the first item paid off as the debtors repaid over the years. Examining the account, we find that, up to the date of the payment in question, the debtors had already paid enough money in their Sears account to have long since paid for the entire purchase price of the fence. We would point out that the finance charges were attributable to the fence as well as to approximately $72.00 of other merchandise. Thus applying the terms of the Sears Charge Agreement, as of April 11, 1980, the entire balance of the fence was paid off, and the account reached a zero balance. The trustee filed his complaint on April 30, 1980; and at the time the bankruptcy case was instituted the debtors owned the fence free and clear of any security interest, even if it had not been cancelled of record. Hence, there is no security interest to be reinstated and the release was not erroneous.

Such "perpetual liens" would appear to be pandemic in the retail business industry wherein the practice has developed of automatically, at the time of the sale, taking a security interest or "reserving title" until the full purchase price has been "paid".

The policing of such continuous "revolving" charge accounts extending, literally, for many years is not to the financial benefit of the seller. Hence, legislation has been adopted in most states to fix legal relationships similar to the provisions of Ohio Revised Code § 1317.071, based in great part upon judicial experience and case precedents in such matters. This court would be constrained to reach the same conclusion even in the absence of legislative treatment of the problem.

*ORDERED, ADJUDGED AND DE-CREED* that the within debtors' payment to the defendant, Sears, Roebuck & Co., of $344.83 on January 2 and January 3, 1980, constituted a preference in the amount of $312.83 plus finance charges paid on other purchases subject to the bankruptcy trustee's avoiding powers under 11 U.S.C. § 547(b) and that all the statutory elements of a voidable preference are present; it is further,

*ORDERED, ADJUDGED AND DE-CREED* that the chain–link fence securing a part of the subject account was paid in full prior to the purchases made on and after March 9, 1979, and the Court, therefore, DENIES the defendant's request that the Court reinstate its security interest in the fence; it is further,

*ORDERED, ADJUDGED AND DE-CREED* that the subject payments do not meet the requirements of 11 U.S.C. § 547(c)(2) and, therefore, do not qualify as an exception to § 547(b) and the above payment is hereby avoided and Sears is ordered to turnover $312.83 to the trustee herein, plus finance charges on the purchases subsequent to the fence, up to the total amount of $344.83.