REAVLEY, Circuit Judge:
 

 The trustee in bankruptcy for the bankrupts, Charles C. Duran, his wife, and his wholly owned corporation, Char-Mac Enterprises, Inc., brings this suit in an attempt to avoid a setoff by First National Bank of Jackson, Mississippi (FNB) against secured debts owed the bank by the bankrupts. He contends that the setoff was improper under § 68 of the Bankruptcy Act and a fraudulent conveyance under § 67(d)(2)(d) of the Bankruptcy Act. 11 U.S.C. §§ 107(d)(2)(d), 108 (1976) (repealed 1978).
 
 [1]
 
 The district court determined that the trustee had failed to prove the requisite fraudulent intent on the part of FNB and, therefore, refused to set aside the setoff. The trustee appeals, insisting that the district court erred in its determination of FlT3’s good faith. We affirm the judgment of the district court.
 

 I.
 

 Charles Duran had three checking accounts at FNB-as well as outstanding secured loans amounting to approximately $500,000. He also had various accounts and loans at Citizens National Bank (CNB), another bank in Jackson. Duran was engaged in kiting checks between his accounts with the two banks. He would deposit a check drawn on a CNB account into an FNB account and immediately write checks on the deposited amount. FNB would pay the latter checks, although they were being paid against uncollected funds. FNB would not be certain that the deposited checks on the CNB account had been finally paid by CNB until after the check clearing process had been completed on midnight of the day following the day FNB presented the check to CNB for payment. This is the “midnight deadline rule” set forth in the Uniform Commercial Code, § 4-302, Miss.Code Ann. § 75-4-302. Duran was engaged in the same process-making large deposits and writing checks on the balance before it was collected-at CNB. A kite collapses only when one bank discovers it or for any reason refuses to pay checks drawn against uncollected funds. When that bank returns a check that was deposited in the other bank, the other bank is left with a loss if it has paid checks against those uncollected funds. Therefore, the first bank to discover the kite is usually in the best position to relieve itself of any loss.
 

 
 *688
 
 On Tuesday, April 2, 1974, FNB discovered that it had been paying large amounts of money against uncollected funds in Duran’s accounts. The bank officers immediately suspected a kite and “froze” all of Duran’s FNB accounts so that no more checks would be paid. Deposits, however, were still accepted into those accounts. FNB had paid $443,686.45 against uncollected funds drawn on the Duran accounts the previous Thursday and Friday, March 28 and 29. They had also accepted some of Duran’s checks for payment on Monday. FNB reversed and returned the Monday checks as drawn against uncollected funds, as it was entitled to do since the midnight deadline had not yet passed. The bank was left with a possible loss, however, on the checks paid the week before.
 

 FNB did not at that time notify CNB or Duran of the discovered kite. The officers of FNB merely waited to see if CNB would pay the checks deposited in the FNB accounts as was necessary for FNB to recover the $443,686.45 paid earlier. Apparently, by Friday, April 5, FNB became certain that it would not have to bear losses because of Duran’s kite. CNB discovered the kite on Thursday, April 4, and began returning checks which Duran had deposited in his FNB account. When the air cleared and the accounts settled, FNB had collected enough funds to cover the checks paid March 28 and 29 and approximately $500,000 in excess of that amount. CNB was faced with a loss. On Monday, April 7, FNB decided to accelerate Duran’s notes and set the amount due off against the collected balances in the accounts. FNB carried- out the setoff on April 9 when it returned the notes and the collateral to Duran.
 

 II.
 

 The trustee first attacks the setoff itself, contending that it is void under § 68 of the Bankruptcy Act. Section 68 provides for the setoff of mutual debts between a bankrupt and a creditor.
 
 [2]
 
 Under the Act, such setoffs are allowed in the distribution of the bankrupt’s estate and within the four month preference period covered by § 60 of the Act, as well as in the period covered by § 67(d). The trustee here claims FNB’s setoff is voidable because it was made outside of the ordinary course of business and in bad faith. In support of his position the trustee brings to our attention several cases in which courts have refused to allow a setoff for these reasons.
 
 In re Multiponics, Inc.,
 
 622 F.2d 725 (5th Cir. 1980);
 
 Katz v. First National Bank of Glen Head,
 
 568 F.2d 964 (2d Cir. 1977);
 
 Mayo v. Pioneer Bank & Trust Co.,
 
 270 F.2d 823 (5th Cir. 1959). These cases, however, are concerned with preferences made within four months of bankruptcy, covered by § 60 of the Bankruptcy Act. Our case is not such a preference case. Since the setoff occurred more than four months before the bankruptcy, this case is controlled by § 67(d).
 
 [3]
 

 III.
 

 A setoff of mutual debts made in the time frame covered by § 67(d) may be set aside only if the trustee satisfies the requirements of the statute. The trustee here proceeds under § 67(d)(2)(d), which provides:
 

 “Every transfer made or every obligation incurred by a debtor within one year pri- or to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent ... (d) as to then exist
 
 *689
 
 ing or future creditors, if made or incurred with actual intent ... to hinder, delay or defraud either existing or future creditors.”
 

 In order to satisfy the statute the trustee must first present us with a “transfer ... by the debtor”. The only “transfer” by Duran here is the deposits made into his FNB accounts that FNB collected and used to setoff the pre-existing debts. The setoff itself is not a transfer by Duran because he had no control over it; FNB had the right to execute the setoff, and did so. It is well settled that deposits in an unrestricted checking account made in the regular course of business do not constitute transfers within the meaning of the Bankruptcy Act since they create a debtor-creditor relationship between the bank and the depositor.
 
 New York County National Bank v. Massey,
 
 192 U.S. 138, 145, 24 S.Ct. 199, 200, 48 L.Ed. 380 (1904);
 
 Katz,
 
 568 F.2d at 969;
 
 Mayo,
 
 270 F.2d at 837 n.21. The Bankruptcy Act contemplates transfers that deplete the estate of the bankrupt or prefer one creditor at the expense of another. Such is not the case when the bankrupt makes a deposit into his general checking account. When Duran deposited CNB checks into his FNB accounts he was merely obtaining an obligation owed by FNB by the cancellation of an obligation owed by CNB. It had no effect on his estate or his creditors. Duran’s deposits into his FNB accounts, therefore, cannot be considered “transfers” under § 67(d)(2).
 

 The judgment of the district court is, therefore, AFFIRMED.
 

 [1]
 

 . This case is governed by the old Bankruptcy Act (repealed November 6, 1978 by Pub.L.No. 95-598, 92 Stat. 2549) because it commenced under that Act.
 
 Id.
 
 § 403(a), 92 Stat. 2683. In the text of this opinion, all references to sections of that Act will be to the section number of the Act itself rather than to the superceded United States Code sections.
 

 [2]
 

 . Section 68(a) provides:
 

 In all cases of mutual debts or mutual credits between the estate of the bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.
 

 [3]
 

 . It is true that a setoff may be void if a true debtor-creditor relationship does not exist between the bank and its depositor, because the requisite mutuality of obligation is no longer present.
 
 See Multiponics,
 
 622 F.2d at 728;
 
 In re Applied Logic Corp.,
 
 576 F.2d 952, 958 (2d Cir. 1978). When a customer deposits funds into an ordinary checking account, the bank becomes indebted to the customer, and a debt- or-creditor relationship exists between the bank and the depositor.
 
 Multiponics,
 
 622 F.2d at 728. This is also the rule in Mississippi.
 
 Citizens National Bank v. First National Bank,
 
 347 So.2d 964, 968 (Miss.1977).