## In re CAMELOT MOTORS CORPORATION, Debtor.

### Richard C. REMES, Trustee, Plaintiff,

### v.

### CONSUMERS POWER COMPANY, Defendant.

Bankruptcy No. SK 85–00739.
Adv. P. No. 87–0642.

United States Bankruptcy Court,
W.D. Michigan.

May 26, 1988.

As Amended June 15, 1988.

---

Richard C. Remes, trustee, plaintiff.

Stanley, Davidoff and Gray, P.C., Paul F. Davidoff, Kalamazoo, Mich., for plaintiff.

Michael G. Wilson, Jackson, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING TRUSTEE'S COMPLAINT TO AVOID PREFERENTIAL TRANSFER

JO ANN C. STEVENSON,
Bankruptcy Judge.

On April 1, 1985, Camelot Motors Corporation (hereinafter "Debtor") filed its petition under Chapter 11 of the Bankruptcy Code. Subsequently, on December 23, 1985 Debtor's Chapter 11 case was converted to Chapter 7. Lloyd Kellum was initially appointed trustee following which Richard C. Remes (hereinafter "Trustee") was appointed Successor Trustee on February 16, 1988 pursuant to this Court's Order of that date. The Trustee filed his Complaint to Avoid Preferential Transfer on December 14, 1987 alleging that Consumers Power Company (hereinafter "Consumers Power") received preferential transfers totaling $5,855.11,[1] which transfers are avoidable under the provisions of 11 U.S.C. § 547. In its answer, Consumers Power raised the defenses of 11 U.S.C. § 547(c)(2) (ordinary course of business) and 11 U.S.C. § 547(c)(4) (subsequent value).

Pursuant to the agreement reached by the parties at the March 7, 1988 pretrial the Trustee filed his Motion for Summary Judgment, and Consumers Power filed its response thereto withdrawing its 11 U.S.C. § 543(c)(2) (ordinary course of business) defense.

The parties agree that all the elements of § 547(b) are met. That is, that an interest of the debtor in property was transferred

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

  (A) on or within 90 days before the date of the filing of the petition;

  .  .  .  .  .

(5) that enables such creditor to receive more than such creditor would receive if—

  (A) the case were a case under Chapter 7 of this title;

  (B) the transfer had not been made; and

  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

1. At oral arguments the parties agreed that the actual amount of the March 12, 1985 payment was $5,855.11, not the $5,850.11 figure contained in Consumers Powers' answer.

■ The sole issue before this Court is the proper application of the subsequent value defense of 11 U.S.C. § 547(c)(4) to the undisputed facts of this case.

Consumers Power explains that the Debtor incurred an electric bill of $2,634.62 for the period March 22, 1985 to April 19, 1985. When the Debtor filed its Chapter 11 petition on April 1, 1985, Consumers Power, as was its practice and in order to separate the pre-petition from post-petition debts, prorated the debtor's account as of the April 1, 1985 filing date. Accordingly, $11/29$ths representing March 22 to April 1 of the March 22, 1985 to April 19, 1985 bill, or $999.34, was attributed to the pre-petition period, and $18/29$ths of that bill covering the post-filing period of April 2, 1985 to April 19, 1985, or $1,635.28, was attributed to the post-petition period. The parties agree that these amounts were correctly attributed to the pre and post petition periods.

It is the Trustee's position, however, that when a preference defendant utility company, such as Consumers Power, claims a subsequent value defense, the operative date for calculating the dollar amount of that defense is the date the utility company actually provided additional unpaid for electricity or service, not the date that the utility reads the meter. In this case, the Trustee contends that the amount which Consumers Power may set off against the March 12, 1985 $5,855.11 preferential payment is the actual value of the unpaid for electricity provided after that date.

This Court concurs with the Trustee's analysis.

Section 547(c)(4) states:

(c) The trustee may not avoid under this section a transfer—

.　　.　　.　　.　　.

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

For § 547(c)(4) to be applicable, three requirements must be met: the creditor must have extended the new value after receiving the preference; the new value must be unsecured; and the new value must remain unpaid. *In re Bishop*, 17 B.R. 180, 183 (Bkrtcy.N.D.Ga.1982). The parties agree that the *Bishop* requirements are met, and that no further payment was received after receipt of the March 12, 1985 payment of $5,855.11. Under § 547(c)(4) the question is whether there was an extension of new value by the creditor after the receipt of that transfer. And, in fact § 547(c)(4) states that *after* such transfer, such creditor gave new value. (emphasis added).

In addition to the clear language of the statute, this Court is further persuaded by the reasoning and analysis of *Matter of Georgia Steel, Inc.*, 38 B.R. 829 (Bkrtcy.M. D.Ga.1984). In *Georgia Steel* the Court determined the relevant date for calculating the subsequent value defense to a preferential transfer defendant utility company which provided unpaid for gas after it received payments deemed preferential under Section 547(b). As stated by Bankruptcy Judge Hershner:

The Court notes that in applying subsection (c)(4), the date the new value was actually received by a debtor must be used rather than the date of the meter reading.[5]

---

[5]. Subsection (c)(2) addresses when a debt was incurred by a debtor, while subsection (c)(4) addresses when the debtor received new value. Subsections (c)(2) and (c)(4) serve different purposes. Subsection (c)(4) is to encourage creditors to deal with distressed businesses, while (c)(2) is to protect normal business transactions. It thus is reasonable that Congress used "incurred" in (c)(2) and "value" in (c)(4). Debtor received "value" when the gas was delivered through the pipeline even though the debt was not "incurred" until the meter was read. *See* 4 Collier on Bankruptcy ¶ 547.05 (15th Ed. 1983).

38 B.R. at 838.

The cases cited by Consumers Power deal with the issue of when a debt is in-

curred (the date the meter is read or the date the commodity/service is provided) for purposes of determining the ordinary course of business preference defense raised by a utility company under former 547(c)(2) which employed the 45 day rule test, *In re Thomas W. Garland, Inc.*, 19 B.R. 920 (Bkrtcy.E.D.Mo.1982); *In re Keydata Corp.*, 37 B.R. 324 (Bkrtcy.D.Mass. 1983), not the subsequent value defense. That issue, however, is not before this court. For purposes of 547(c)(4) value is given when the commodity of electricity is provided, not when the meter is subsequently read.

The Creditor-transferee has the burden of establishing the § 547(c) exceptions. *See In re Haynes*, 28 B.R. 136 (Bkrtcy.M. D.Tenn.1983).

The stipulated facts do not furnish any precise measure of the quantity or value of the electricity provided after March 12, 1985, the day Consumers Power received the $5,855.11 preference payment. Counsel for Consumers Power agreed at the hearing that as it would be virtually impossible to precisely determine that amount, proration is the only reasonable solution. As the period of March 22, 1985 to April 1, 1985 has already been taken care of by allocation of the $999.34, Consumers Power's final bill of $1,937.12 covering the period February 21, 1985 to March 22, 1985 is prorated to provide a reasonable estimate of the value of the service received for the 1985 period of March 13 to March 22. That additional service was worth 10/31 of $1,937.12 or $624.88. Under the circumstances, the Court accepts that valuation. *See In re Chase & Sanborn Corp.*, 55 B.R. 86, 87 (Bkrtcy.S.D.Fla.1985).

Accordingly, Consumers Power is entitled to set off unpaid subsequent value totaling $1,624.22 ($999.34 for the period March 22, 1985 to April 1, 1985 and $624.88 for the period March 13, 1985 to March 22, 1985) against the $5,855.11 March 12, 1985 preferential transfer, thus, resulting in a net preference due the estate of $4,230.89.

Although Bankruptcy Rule 7054(b) allows costs to the prevailing party, the Court declines to do so here.

The court will enter a separate judgment on this Complaint to be prepared by and in favor of the trustee in the amount of $4,230.89.