**In re TI ACQUISITION, LLC, Debtor.**

**Southern Polymer, Inc., Movant,**

**v.**

**TI Acquisition, LLC, Respondent.**

**No. 08–42370–MGD.**

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

May 6, 2009.

Richard T. Klingler, Richard C. Kennedy, for Debtor.

J. Robert Williamson, attorney for Southern Polymer, Inc.

Thomas R. Walker, attorney for Bank of America, N.A. Martin P. Ochs, attorney for the U.S. Trustee Brendan G. Best, Chris D. Phillips, Margaret O. Rentz, attorneys for the Official Committee of Unsecured Creditors.

## ORDER ALLOWING SOUTHERN POLYMER, INC'S SECTION 503(b)(9) ADMINISTRATIVE EXPENSE CLAIM AND DENYING IMMEDIATE PAYMENT THEREOF

MARY GRACE DIEHL, Bankruptcy Judge.

This matter is before the Court on the Motion of Southern Polymer, Inc. ("SPI"),

for Allowance and Immediate Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(9) (the "Motion"). (Docket No. 96). The Motion is supported by the Committee of Unsecured Creditors (the "Committee") and opposed by Debtor TI Acquisition, LLC ("Debtor"), and Debtor's major secured creditor, Bank of America, N.A. ("BOA"). For the reasons set forth herein, the Court determines that SPI is entitled to an allowed administrative expense under 11 U.S.C. § 503(b)(9) but that immediate payment of that claim is denied. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## I. *FINDINGS OF FACT*

An evidentiary hearing on SPI's Motion was held before the Court on February 3, 2008. The Court heard testimony from Harry G. Watson, SPI's comptroller, John W. Everett, former Chief Operating Officer of Debtor, and Wayman Carroll, Debtor's former comptroller. Documents tendered by SPI and Debtor were admitted into evidence without objection from any party. The relevant evidence is summarized herein.

The following basic facts are not in dispute. Debtor filed its Chapter 11 case on July 27, 2008 (the "Petition Date"). Within the twenty days preceding the Petition Date, SPI made two shipments of plastic resin to Debtor with a total invoice price of $302,512.06. These shipments were received by Debtor on July 11, 2008, and July 22, 2008, and were invoiced by SPI for $154,840.00 and $147,672.00, respectively. Each shipment consisted of a railcar filled with plastic resin. The shipments varied in price because of a slight weight difference and because the price per pound of material is a variable market price.

The parties also agree that Debtor made payments to SPI during this same period. On July 10, 2008, Debtor made a payment to SPI in the amount of $135,610.00 and on July 23, 2008, Debtor made a payment to SPI in the amount of $144,300.00. These respective payments were applied by SPI to Invoice No. 053767 dated April 24, 2008, in the amount of $135,610.00 and Invoice No. 054054 dated April 28, 2008, in the amount of $144,300.00. Invoice Nos. 053767 and 054054 represented the oldest outstanding invoices owed by Debtor to SPI.

The terms stated on SPI's invoice to Debtor were NET 30 DAYS. Debtor did not pay according to such terms in the months leading up to the Petition Date. Debtor had an initial credit limit with SPI of approximately $1.0 million. As of the Petition Date, however, SPI had actually extended $1.3—1.4 million in credit to Debtor. There was no written agreement between the parties. The evidence, however, established that the standard practice between the parties was for Debtor to issue a check to SPI at approximately the same time as Debtor placed a new order for material. Debtor placed orders by phone and told SPI that a check would be forthcoming. SPI did not wait for the receipt of a check but, instead, relied upon the Debtor's historical conduct and verbal promise of payment. SPI reasoned that the credit limit would not be exceeded in any significant way by the new shipment with Debtor's regular practice of promptly sending checks as promised.

The practice was described as by the parties as a "one for one" exchange. Debtor would receive one railcar of resin and would pay for one railcar of resin. Debtor would issue a check in the amount corresponding to the oldest outstanding invoice, and SPI would apply it to the invoice number noted on the check. SPI

would release the new railcar of resin before the check from Debtor had cleared the bank or, in some cases, before the check was even received.

On December 19, 2008, the Court set the bar date for administrative expense claims as February 15, 2009. (Docket No. 250). SPI had filed the Motion on August 12, 2008. In addition, SPI also filed a Proof of Claim (Claim No. 140) on December 26, 2008, and filed an Amended Claim on January 12, 2009. The claim is in the total amount of $1,329,787.00 and states that $302,512.00 of the claim is subject to priority under 11 U.S.C. § 507(a)(2). SPI's Proof of Claim included supporting documentation, including invoices dated July 11, 2008, and July 22, 2008, for two shipments that were received by Debtor within twenty days before the Petition Date.

There is no substantial dispute in the testimony of the witnesses or the documentary chain shown by the series of invoices and check copies that were admitted into evidence. The parties disagree, however, about how this factual pattern interacts with § 503(b)(9) of the Bankruptcy Code, whether § 502(d) is applicable, and whether immediate payment of the claim is appropriate.

## II. *THE HISTORY AND APPLICATION OF § 503(b)(9)*

Section 503(b)(9) was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 503 is entitled "Allowance of Administrative Expenses" and subsection 503(b) details nine types of expenses which are to be allowed as administrative expenses and therefore are entitled to priority under § 507(a)(2). This list is non-exclusive since it is prefaced by the word "including." *E.g., In re Thompson,* 67 B.R. 1, 2 (Bankr.N.D.Ohio 1984). Section 503(b)(9)

encompasses "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of business." While most of the other paragraphs in § 503(b) are expenses incurred by the debtor post-petition, § 503(b)(9) joins §§ 503(b)(3)(A), 503(b)(3)(E) and 503(b)(4) in describing pre-petition expenses that are to be accorded administrative expense priority. Unlike the other pre-petition expense sections, the applicability of § 503(b)(9) is not limited to involuntary bankruptcy cases or those cases involving the appointment of a receiver. Rather, § 503(b)(9) is structured to have general applicability to most Chapter 11 cases.

The treatment of expenses in § 503(b)(9) appears to be an outgrowth of the policy that first appeared in 11 U.S.C. § 546(c), which preserved the right of reclamation to certain sellers of goods on credit. BAPCPA included both the addition of § 503(b)(9) and the amendment of § 546(c). The combination of these changes suggests that Congress intended to recognize a reclamation right for sellers that was no longer exclusively dependent upon state law. Alternatively, and at a minimum, these two changes to the Bankruptcy Code expanded certain aspects of state law reclamation. *See In re Dana Corp.,* 367 B.R. 409 (Bankr.S.D.N.Y.2007) (rejecting the creation of an independent federal right); COLLIER ON BANKRUPTCY ¶ 546.04[2] (15th rev. ed.) (explaining that the amendment's deletion of the language "any statutory or common law" could serve no purpose if not to uncouple bankruptcy right of reclamation from state law). Prior to BAPCPA, § 546(c) provided for an administrative priority claim for reclaiming sellers who were denied a right of reclamation by the court. BAPCPA deleted that

portion of § 546(c)(2) and added § 503(b)(9), thus according protection to sellers of goods on credit in the period immediately preceding the filing of a bankruptcy petition, regardless of whether the technical requirements for reclamation were met. While no legislative history exists, one can only surmise that these amendments reflect Congress' intent to better insure that ordinary course of business sellers of goods received by the debtor in the twenty days before the petition date gain priority in payment over most other creditors.

Since BAPCPA was enacted, bankruptcy courts have considered some issues raised by § 503(b)(9). The court in *Brown & Cole Stores, LLC,* held that a secured claim could qualify as an administrative expense claim under amended § 503(b)(9). *In re Brown & Cole Stores, LLC,* 375 B.R. 873, 878 (9th Cir. BAP 2007). Recently, the bankruptcy court for the district of Delaware held that the administrative priority provided by § 503(b)(9) is limited to goods received by the debtor in the twenty days preceding bankruptcy. *In re Goody's Family Clothing, Inc.,* 401 B.R. 131, 134–135 (Bankr.D.Del.2009) (denying administrative expense status under § 503(b)(9) for services provided to the debtor within 20 days proceeding the bankruptcy filing). Similarly, in *Plastech Engineered Products, Inc.,* the court relied on the U.C.C. definition for goods when it held that claimants with mixed goods and services claims would only hold allowed priority claims for the goods portion of the claims. *In re Plastech Eng'r Prods., Inc.,* 397 B.R. 828, 838 (Bankr.E.D.Mich.2008). In *Global Home Products, LLC,* the court addressed the issue of the timing of payment on § 503(b)(9) claims. There, the court noted that § 503(b)(9) does not specify a time for payment, yet § 1 129(a)(9) requires that administrative expense claims, be paid in full on the effective date of the

plan. *In re Global Home Prods., LLC,* 2006 WL 3791955 (Bankr.D.Del. Dec.21, 2006). The court also considered three factors in determining how to exercise its discretion on the timing of payment of an administrative expense claim: (1) the prejudice to the debtors, (2) hardship to claimant, and (3) potential detriment to other creditors. The court ordered that administrative expenses were to be payable only on the effective date of the plan. *Id.* (citing *In re Garden Ridge Corp.,* 323 B.R. 136, 142–43 (Bankr.D.Del.2005)). In *Bookbinders' Restaurant, Inc.,* the court held that the timing of payment on an allowed § 503(b)(9) claim was within the discretion of the court. *In re Bookbinders' Rest., Inc.,* 2006 WL 3858020 (Bankr.E.D.Pa. Dec.28, 2006). Other issues are likely to arise as claimants and the courts develop more experience with § 503(b)(9) and its nuances.

This case involves two issues: (1) whether SPI's status as a § 503(b)(9) claimant is affected by SPI's receipt of funds from Debtor during the twenty-day period preceding the Petition Date, and (2) whether § 502(d) applies to disallow SPI's claim. Each of these issues will be discussed separately.

## A. The Effect of Payments Received by SPI on Its Section 503(b)(9) Claim

Section 503(b)(9) provides administrative expense status for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). There is no dispute that Debtor received goods from SPI within twenty days before the Petition Date, and that the goods were sold to the debtor in the ordinary course of its business. The

value of the goods sold, totaling $302,512.06, is also undisputed. The parties, however, dispute whether payments made by Debtor to SPI within the twenty days preceding Debtor's petition should affect the amount of SPI's allowed administrative expense. SPI seeks an administrative expense for the full value of the goods received by Debtor. Debtor and BOA contend that SPI's receipt of $279,910.00 from Debtor during the 20–day period should eliminate SPI's ability to claim priority for the value of the goods received by Debtor. Alternatively, Debtor and BOA argue that SPI's asserted § 503(b)(9) claim should be reduced by the amount of funds received by SPI during the 20–day period proceeding the Petition Date.

The argument made by Debtor and BOA is similar to the argument made by the creditor in *In re Brown & Cole Stores, LLC,* 375 B.R. 873 (9th Cir. BAP 2007). There, a creditor, Associated Grocers, Incorporated ("AGI"), sought allowance of a § 503(b)(9) claim while asserting that it held a security interest in property of the debtor to secure its claim. *Id.* at 875. The debtor, Brown & Cole Stores, LLC ("B & C"), who opposed the allowance of the administrative expense claim, contended that § 503(b)(9) applied only to unsecured claims for goods received within the twenty-day statutory period. *Id.* at 876. B & C argued that, unlike the language of § 503(b)(1)(B)(I) which provides administrative priority for any tax "incurred by the estate, whether secured or unsecured ...", § 503(b)(9) was silent as to the secured status of the claim. *Id.* at 878. B & C asserted that since all other § 503(b) claims were unsecured claims, the silence implied only unsecured claims were included. *Id.* The Ninth Circuit Bankruptcy Appellate Panel rejected B & C's position on the grounds that the statute was unambiguous. *Id.* The BAP explained:

By the plain terms of the statute, a vendor's right to assert an administrative claim is limited in only three ways: (1) the vendor must have provided goods (not services); (2) the debtor must have received the goods within twenty-days of the commencement of the case; and (3) the goods must have been sold "in the ordinary course" of the debtor's business. 'This right to an administrative claim does not depend on whether the seller has a right to reclaim under state law. . . . It applies even if the goods are no longer in the possession of the debtor or are not identifiable. It applies even if the goods are encumbered by a senior security interest.' Sally S. Neely, *How BAPCPA Affects the Rights of Unpaid Prepetition Sellers of Goods,* SM014 ALI–ABA 31 (March 2007).

*Id.* at n. 7.

B & C also argued that the strict application of § 503(b)(9) to a secured claim would be inequitable to other creditors since funds paid to an administrative claimant would be available to other creditors if not paid to the secured creditor. *Id.* at 876. While the Ninth Circuit B.A.P. deferred to Congress as to the equities and related statutory priorities, it also noted that payment of an administrative claim would free up collateral that could be available for unsecured creditors. *Id.* at 878. The BAP further explained that if such a creditor turns out to be unsecured or under secured, denying it priority as an administrative expense would effectively ignore the statute. *Id.*

 Here, Debtor and BOA argue that the Court should determine SPI's allowable expense by finding the net amount owed to SPI during the twenty-day period before the Petition Date, after netting goods shipped against payments received by SPI in the same period, instead of

allowing the total value of the goods received by Debtor within the statutory twenty-day period. The "net value" theory that Debtor and BOA posit as a basis for reducing SPI's administrative expense is not addressed directly by the plain language of § 503(b)(9). Statutory construction begins with the language of the statute and where the language is plain, the sole function of the court is to enforce the statute according to its terms, unless those terms would lead to an absurd result. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

The plain language of the statute does not permit the interpretation proposed by Debtor and BOA. First, the statute explicitly directs the Court to allow an administrative expense for "the value of any goods received by the debtor." Further, the statute does not require that the goods received must have been shipped on credit. Finally, SPI's netting argument is undercut by the evidence clearly establishing that the payments received by SPI were payments on invoices other than the invoices for the goods received within the twenty-day period before the Petition Date. In that respect, the facts before the Court can be easily distinguished from those in *In re WETCO Restaurant Group, LLC*, 2008 WL 1848779 (Bankr.W.D.La. Apr.23, 2008). There, the evidence showed that the debtor and creditor's payment arrangement included a wire transfer as prepayment for the shipment within the statutory twenty-day period. *Id.* at **1–2. In contrast, here, all witnesses agreed that the Debtor's payments were on prior invoices and were not prepayments for the goods to be shipped.

Accordingly, SPI is entitled to a § 503(b)(9) administrative expense claim in the amount of $302,512.06. This determination on its own, however, does not end the inquiry. The Court must next consider the applicability of § 502(d) and the timing of the payment of the claim.

## B. Section 502(d) Is Not A Defense to the Allowance of a Section 503(b)(9) Administrative Expense Claim

Section 502 of the Bankruptcy Code is entitled "Allowance of claims or interests." Subsection (a) provides for the deemed allowance of a claim unless a party in interest objects. Subsection (b) enumerates nine grounds for the disallowance or limitation of the amount of claims. Subsection (c) deals with estimation of claims and subsection (d) provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

The purposes of § 502(d) are to foster the equality of distribution among class members and to compel compliance with orders of the Court. *In re Davis*, 889 F.2d 658, 661 (5th Cir.1989), *cert. denied*, 495 U.S. 933, 110 S.Ct. 2175, 109 L.Ed.2d 504 (1990). Thus, the holder of an unsecured, pre-petition claim, who may receive less than the full amount of his claim paid, must pay his pre-petition debt to the estate in full and in one hundred cent dollars.[1] No dollar for dollar offset is avail-

---

1. The Supreme Court, in *Page v. Rogers*, 211 U.S. 575, 581, 29 S.Ct. 159, 53 L.Ed. 332

able under these typical circumstances since mutuality is lacking as to pre- and post-petition liabilities.

The most straightforward case for the applicability of § 502(d) would be the factual situation in which a debtor has obtained a judgement an avoidance action against a creditor and the creditor has also filed a claim against the estate for sums owed pre-petition by the debtor. In such a case, the creditor's claim would be disallowed until it paid the amount of the judgment to the debtor pursuant to § 502(d).

The case before the Court differs from the above simple hypothetical example in two respects: (1) the claim asserted by SPI is an administrative claim, not a pre-petition claim and (2) Debtor has commenced a preference action against SPI, but no judgment of liability has been entered and SPI disputes its liability.[2]

■ The issue of whether an administrative claim may be disallowed under § 502(d) has divided the courts. The first bankruptcy court to consider the issue was the Middle District of Georgia in *In re Georgia Steel, Inc.*, 38 B.R. 829 (Bankr. M.D.Ga.1984). In *Georgia Steel, Inc.*, a utility creditor sought allowance of an administrative expense claim and the Trustee objected to that claim based upon the alleged preferential payments received by the utility creditor. *Id.* at 839. The bankruptcy court first determined that the utility creditor was liable for a preference amount. *Id.* at 832–39. Then, the court assessed whether the utility creditor's administrative expense claim could be offset by the preference amount. *Id.* at 839. In denying the utility creditor the right to

setoff the preference liability, the bankruptcy court stated, "[t]he fact that [the utility creditor's] claim is for an administrative expense has no bearing." *Id.* (citing § 57g of the Bankruptcy Act and explaining that § 502(d) "basically tracks" § 57g of the Bankruptcy Act). The court held that § 502(d) required disallowance of the administrative expense claim until the utility creditor repaid the preferential transfers. *Id.* at 840. Essentially the same rationale was adopted by the Ninth Circuit Bankruptcy Appellate Panel in *In re MicroAge, Inc.*, 291 B.R. 503 (9th Cir. BAP 2002). The BAP relied on the broad language of § 502(d) to conclude that "any claim" was subject to disallowance under this section. *Id.* at 508. Additionally, the BAP found no indication that Congress meant to change the law applicable under the Bankruptcy Act and emphasized the use of the term "entity" rather than "creditor" in § 502(d) to support its determination of applicability to administrative expense claims. *Id.* at 512 (affirming the bankruptcy court's ruling since an administrative expense had been allowed under separate order, the § 502(d) defense was raised too late).

In contrast, a number of bankruptcy court opinions hold that § 502(d) does not apply to the allowance of administrative expenses. *E.g., In re Plastech Eng'r Prods.*, 394 B.R. 147, 161–164 (Bankr. E.D.Mich.2008); *In re Roberds, Inc.*, 315 B.R. 443, 476 (Bankr.S.D.Ohio 2004); *In re Durango Ga. Paper Co.*, 297 B.R. 326, 330–31 (Bankr.S.D.Ga.2003); *In re Lids Corp.*, 260 B.R. 680, 683–84 (Bankr.D.Del. 2001); *In re CM Holdings, Inc.*, 264 B.R.

(1909), held that pursuant to § 57(g) of the Bankruptcy Act, the predecessor statute to § 502(d), the preference defendant could deduct his dividend from the preference amount, including interest.

2. On January 30, 2009, Debtor commenced Adversary Proceeding 09–4009–MGD seeking the recovery from SPI of preferential payments of $193,152.75 or $495,664.75, depending on the Court's ruling in the instant matter.

141, 157–58 (Bankr.D.Del.2000). The rationale of these cases is that allowance of administrative expense claims is accomplished exclusively pursuant to § 503, not § 502. *E.g., In re Plastech Eng'r Prods.*, 394 B.R. at 161 (stating that "the allowance of claims under § 502 is entirely separate from the allowance of administrative expenses under § 503").

Section 502(d) does not contain any language or reference which would make it applicable to administrative expenses of any kind. More specifically, the language of § 502(d) does not imply or create a defense to a § 503(b)(9) claim. The court in *Plastech* specifically considered the issue of the applicability of § 502(d) in the context of an administrative expense claim arising from § 503(b)(9) and found disallowance to be inapplicable. Despite the fact that § 503(b)(9) claims differ from other administrative claims in that they are (1) pre-petition claims and (2) not limited to applicability in involuntary or receivership cases, the *Plastech* court holds that § 502(d) is inapplicable. The court determined that the purpose of § 502 is to govern the allowance of claims filed pursuant to § 501. *In re Plastech Eng'r Prods.*, 394 B.R. at 161. Section 502(d) addresses § 501 claims explicitly in its introductory language, stating that "[n]otwithstanding subsections (a) and (b) of this section," which indicates its limited applicability to claims governed by §§ 501 and 502. *Id.* Further, § 502(d) does not make any cross-reference to § 503 and there is no statutory support for its application to § 503. While § 502(d) does apply to both pre- and post-petition claims, it applies only to those pre- and post-petition claims that are governed by § 501. *Id.* Although an administrative expense under § 503(b)(9) is for a pre-petition debt, its pre-petition nature does not dictate that § 503(b)(9) expenses should be treated differently than other § 503(b) expenses. Indeed, the plain language of the statute does not distinguish in any way among the various types of § 503(b) expenses. *In re Plastech Eng'r Prods.*, 394 B.R. at 163.

The procedural distinctions between the allowance of claims pursuant to § 501 as compared to the allowance of administrative expenses pursuant to § 503 also supports § 502's limited applicability to § 501 claims. *See In re Plastech Eng'r Prods.*, 394 B.R. at 161–162. Section 503(a) states that "[a]n entity may timely file a request for payment of an administrative expense," while claims under § 501 require the filing of a proof of claim. As evidenced in this matter before the Court, SPI's motion for allowance, and the prosecution of that motion, differs from the presumptive allowance of § 501 claims pursuant to § 502(a). Additionally, the Federal Rules of Bankruptcy Procedure make distinctions in procedure for administrative expenses.[3]

The Court is also persuaded by Judge Walrath's policy-based rationale in *Lids Corporation:* "If trade vendors felt that a preference could be used to prevent the payment of their administrative claims, they would be extremely reluctant to extend post-petition credit to a chapter 11 debtor."[4] *In re Lids Corp.*, 260 B.R. 680 at 683. Further, as Judge Dalis notes in *Durango Georgia Paper,* the mandatory

---

**3.** *Compare* Fed. R. Bankr.P. 3001–3008 (filing and allowing claims under § 501) *with* Fed. R. Bankr.P. 1019(6) (timely filing a request for payment under § 503).

**4.** As discussed, *infra,* a 503(b)(9) administrative expense arises from pre-petition activity.

However, the same rationale would apply, since suppliers are encouraged to supply goods to a failing business by the fact that they will have allowable administrative expenses if a case is filed within twenty (20) days of receipt of a shipment.

language of allowance in § 503, "there shall be allowed," as contrasted with the mandatory disallowance language of § 502(d), "the court shall disallow," does not give the Court authority to presume one mandatory provision trumps another. *See In re Durango Ga. Paper Co.*, 297 B.R. at 330 (citing *Marsano v. Laird*, 412 F.2d 65, 70 (2d Cir.1969)). For the foregoing reasons, SPI's § 503(b)(9) administrative expense claim is not subject to disallowance pursuant to § 502(d). The Court must next consider when SPI's claim should be paid.

## C. SPI Is Not Entitled to Immediate Payment

 The Court must now consider the timing of the payment of the allowed administrative expense of SPI. Two factors support the Court's determination that payment should await a determination of SPI's liability in the adversary proceeding. First, the timing of the payment of administrative claims is within the discretion of the Court. *In re Colortex Indus.*, 19 F.3d 1371, 1384 (11th Cir.1994); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr.D.Del.2002); *see also* COLLIER ON BANKRUPTCY ¶ 503.3 at 503–13 (15th rev. ed.). In this case, BOA has consented to the payment of all allowed administrative claims from its collateral, so there is no prejudice of a delay to SPI. Moreover, if the Court were to order immediate payment and the Debtor later obtained a judgment against SPI in its avoidance action and SPI was unable to pay, other creditors would be prejudiced. Second, the avoidance action filed by Debtor is in its early stages but the allegations made in the Complaint set forth a *prima facie* case for avoidance of payments which are in

excess of the allowed administrative claim of SPI. Thus, it is sound policy to defer requiring payment until the outcome of the pending adversary proceeding is determined.[5] Accordingly,

**IT IS HEREBY ORDERED** that the administrative expense of SPI is **ALLOWED** in the amount of $302,512.06. Payment of the claim is deferred until further Order of the Court.

The Clerk is shall serve a copy of this Order upon counsel for Debtor, counsel for Movant, counsel for the U.S. Trustee, counsel for the Official Committee of Unsecured Creditors, and the party on the attached distribution list.

---

5. Of course, in order to confirm a Plan of Reorganization, the administrative expense of SPI would have to be paid in full on confirmation. 11 U.S.C. § 1129(a)(9)(A). This would be true regardless of whether the adversary proceeding has been finally resolved.