**In re TI ACQUISITION, LLC, Debtor.**

**TI Acquisition, LLC, Plaintiff,**

**v.**

**Southern Polymer, Inc., Defendant.**

**Bankruptcy No. 08–42370–MGD.**
**Adversary No. 09–04009–MGD.**

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

April 28, 2010.

Richard C. Kennedy, Richard T. Klinger, Kennedy, Koontz & Farinash, Chattanooga, TN, for Plaintiff.

J. Hayden Kepner, Jr., J. Robert Williamson, Scroggins & Williamson, Atlanta, GA, for Defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MARY GRACE DIEHL, Bankruptcy Judge.

This adversary proceeding is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross Motion for Partial Summary Judgment. (Docket Nos. 22, 25). These motions raise a question of first impression in this Circuit with respect to the interplay between a preference action defendant's "new value" defense under 11 U.S.C. § 547(c)(4) and the defendant's allowed and fully funded claim pursuant to 11

U.S.C. § 503(b)(9). For the reasons set out below, the new value defense is not available to Defendant Southern Polymer, Inc. ("SPI"). Plaintiff TI Acquisition, LLC's ("Debtor") Motion for Partial Summary Judgment is GRANTED and Defendant's Cross Motion is DENIED.

### I. FACTS

The facts relevant to the Motions for Partial Summary Judgment are undisputed. Debtor and several of its affiliates filed their Chapter 11 cases in this Court on July 27, 2008. (Bankr.Case No. 08–42370–MGD)[1]. Debtor was a manufacturer of carpeting and textiles. SPI supplied materials that Debtor used in its manufacturing process. Prior to the filing of the Chapter 11 case, and within the twenty-day period preceding the Petition Date, Debtor received two shipments from SPI for which SPI was not paid pre-petition: a July 11, 2008, shipment in the amount of $154,840.00 and a July 22, 2008, shipment in the amount of $147,672.00. (Docket No. 23, ¶¶ 1–3; Docket No. 27, ¶¶ 1–3). On May 6, 2009, the Court entered an Order allowing SPI's § 503(b)(9) claim in the amount of $302,512.06. *In re TI Acquisition, LLC*, 410 B.R. 742, 751 (Bankr. N.D.Ga.2009). That Order further provided that the payment of the claim was deferred pending the outcome of this adversary proceeding. *Id.* Bank of America ("BOA"), as a creditor whose claim was secured by all of Debtor's assets, has reserved funds from the proceeds of the sale or liquidation of Debtor's assets to cover SPI's allowed § 503(b)(9) administrative claim.

On January 30, 2009, Debtor filed the present adversary complaint against SPI to avoid alleged preferential transfers pur-

---

**1.** All docket notations in this Order reference this adversary proceeding, Case No. 09– 04009–MGD, unless specifically identified otherwise.

suant to 11 U.S.C. § 547(b) in the net amount of $193,152.75 reflecting a "new value" credit to SPI for the shipments that were the subject of SPI's pending § 503(b)(9) claim. Since the Court had not ruled yet on the allowance of SPI's administrative claim, Debtor noted in its Complaint that the allowance of the § 503(b)(9) claim would alter the monetary demand. (Complaint at ¶ 13). Debtor's Complaint stated that, if SPI's § 503(b)(9) claim was allowed, that Debtor would not grant SPI new value credit and that the amount of preference sought would be $495,664.75. *Id.*

On January 15, 2010, Debtor filed the present Motion for Partial Summary Judgment seeking a determination that SPI is not entitled both to receive payment on its allowed § 503(b)(9) claim and to use the value of the same pre-petition shipments as a defense pursuant to § 547(c)(4). (Docket No. 22). On February 4, 2010, SPI filed its Response in Opposition to Debtor's Motion and Cross Motion for Partial Summary Judgment. (Docket No. 25). The parties each submitted briefs in support of their motions. (Docket Nos. 24, 26).

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure, applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also, Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Maniccia v. Brown,* 171 F.3d 1364, 1367 (11th Cir.

1999). Each party has moved for partial summary judgment based upon the same undisputed facts and neither party asserts that any material fact is in dispute. Thus, both parties have met the burden of showing that there are no disputed facts and that disposition of the case is warranted without trial. The sole question for the Court is the application of the law to those undisputed facts.

## III. DISCUSSION

 Avoidance actions pursuant to 11 U.S.C. § 547 and administrative expense claims pursuant to 11 U.S.C. § 503(b)(9) both deal with pre-petition transfers between a debtor and a creditor. Section 547 provides for the recovery of transfers made by a debtor to a creditor by permitting a debtor-in-possession, exercising the powers of a trustee, to avoid certain transfers made prior to the bankruptcy filing if the elements of Bankruptcy Code § 547(b) are met. 11 U.S.C. § 547. Certain transfers are not avoidable if a defendant can avail itself of one of the defenses set out in § 547(c). Here, SPI seeks to assert the "new value" defense of § 547(c)(4), which provides as follows:

> (c) The trustee may not avoid under this section a transfer—
>
> > (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
> >
> > > (A) not secured by an otherwise unavoidable security interest; and
> > >
> > > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). The term "new value" as used in this section is defined in § 547(a)(2) as meaning ·

> money or money's worth in goods, services, or new credit, or release by a

transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).

Section 547 focuses on recovering pre-petition transfers made by the debtor to a creditor. Section 547(c)(4) offers protection for pre-petition payments a creditor receives when the creditor then delivers goods to the debtor. Section 503(b)(9) provides creditors with a similar protection. Specifically, § 503(b)(9) allows for post-petition payment to a creditor for the pre-petition transfer of goods from the creditor to the debtor. Section 503(b)(9) encompasses "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of business." 11 U.S.C. § 503(b)(9). While most of the other paragraphs in § 503(b) are expenses incurred by the debtor post-petition, § 503(b)(9) joins §§ 503(b)(3)(A), 503(b)(3)(E) and 503(b)(4) in describing pre-petition expenses that are to be accorded administrative expense priority.

There is only one published decision on the precise legal issue raised in this case. In *Commissary Operations*, the Bankruptcy Court for the Middle District of Tennessee held that claims entitled to § 503(b)(9) status may constitute new value for purposes of 11 U.S.C. § 547(c)(4). *In re Commissary Operations*, 421 B.R. 873, 879 (Bankr.M.D.Tenn.2010). While that court contemplated whether payment of a § 503(b)(9) claim would affect the availability of a § 547(c)(4) new value defense, it does not appear from the reported decision that any payment, or reservation for payment, had been made on any § 503(b)(9) claims at the time the court issued its decision. The *Commissary Operations* decision, therefore, is informative but is not based on the precise facts before this Court.

This Court will evaluate the interplay between § 547(c)(4) and § 503(b)(9) in two ways. First, the Court will considered similarities between § 503(b)(9) claims and other types of claims, then address whether the treatment provided to those claims is appropriate for § 503(b)(9) claims. Second, the Court will consider the policies behind § 547(c)(4) and how best to achieve those policies when dealing with § 503(b)(9) claims.

## A. Comparing Claims

Section 503(b)(9) claims can be compared easily to two other types of claims: reclamation claims and critical vendor claims. For each type of claim, the Court will consider the relationship between those claims and § 503(b)(9) claims, the treatment of those claims in § 547 actions, then evaluate whether that treatment is appropriate for § 503(b)(9) claims. Much of the *Commissary Operations* decision seeks to distinguish a creditor's rights pursuant to § 503(b)(9) from the rights of reclamation pursuant to § 546(c), and this Court shall begin there. *Id.* at 877–878.

## 1. Section 503(b)(9) Claims and Reclamation Claims

This Court has previously addressed this history of § 503(b)(9) and its relationship to reclamation rights. *In re TI Acquisition, LLC*, 410 B.R. 742, 745–746 (Bankr.N.D.Ga.2009). In light of that relationship, it is unsurprising that courts should look to the treatment of reclamation claims in § 547 actions when considering the treatment of § 503(b)(9) claims. A decision of the District Court for the Mid-

dle District of Tennessee had previously held that a creditor could not use the new value defense when the new value supplied to the debtor was goods that were subject to a reclamation claim. *In re Phoenix Rest. Group, Inc.*, 373 B.R. 541, 547–548 (M.D.Tenn.2007). That court stated as follows:

> The Bankruptcy Court further held, however, that the amount of Proficient's reclamation claim could be used to deplete Proficient's pre-petition "new value" because Proficient essentially kept strings on those goods and thus, the goods subject to reclamation did not enhance PRG and did not constitute "new value" under § 547(a)(2).... The Court concludes that the Bankruptcy Court correctly analyzed this issue. Proficient had the right either to reclaim goods of a value of $540,000 *or have its reclamation claim enhanced in priority over other creditors to that amount.*

*Id.* (emphasis added).[2]

The emphasized language in the above quote is not discussed by the court in *Commissary Operations* as that court sought to distinguish § 503(b)(9) rights from reclamation rights. The *Commissary Operations* court holds that § 503(b)(9) rights are not "strings on the goods" as reclamation rights are. 421 B.R. at 877. This ignores the conclusion of *Phoenix Restaurant Group* that the "strings" included the right to an administrative claim in lieu of recovery of the goods. 373 B.R. at 548. To receive the benefit of § 503(b)(9) for goods shipped within the twenty-day pre-petition window, the Debtor must provide administrative status to the value of those goods. In this way, § 503(b)(9) claims have similar "strings" on the goods as the "strings"

identified in *Phoenix Restaurant Group*'s analysis of reclamation claims.

Rather than addressing the "string" of enhanced priority, *Commissary Operations* focuses on the liens reclamation creditors have on the goods delivered. *Id.* at 877–878. While a reclamation claim can be satisfied by the return of the goods, an administrative expense is vulnerable to non-payment by an insolvent estate. Here, however, SPI's § 503(b)(9) claim is provided for fully by the reservation of funds from the sale of estate assets, so SPI's position is not any more vulnerable than a reclamation creditor's.

One distinction between § 503(b)(9) claims and reclamation claims is that § 503(b)(9) claims are, by nature, post-petition claims, whereas a reclamation claim may exist under state law whenever a debtor is insolvent, regardless of bankruptcy filings. *Id.* That difference, however, should be relevant only if there is a difference in the value to the estate between goods subject to an allowed § 503(b)(9) claim and those shipped subject to a reclamation claim. If goods subject to a reclamation claim are returned to the creditor, the estate is not enhanced by those goods. Similarly, once a creditor has been given an allowed § 503(b)(9) administrative claim and the claim has been paid (or, as here, reserved for), it is clear that the estate was not enhanced by the "new value." While the *Commissary Operations* court ultimately concluded that § 503(b)(9) claims generally should be distinguished from reclamation claims, this Court finds that § 503(b)(9) claims that have been or will be paid in full are similar to reclamation claims.

---

**2.** *Phoenix Restaurant Group* was governed by pre-BAPCPA law. At that time, the reclamation provision of § 546(c) gave a court the option of awarding an administrative claim in lieu of honoring a right of reclamation.

## 2. Section 503(b)(9) Claims and Critical Vendor Claims

At least three cases have considered critical vendor claims in relation to the new value defense. *Id.* at 878–879; *In re Phoenix Rest. Group*, 373 B.R. at 546–549; and *In re Murray, Inc.*, 2007 WL 5595447 (Bankr.M.D.Tenn.2007). In both *Phoenix Restaurant Group* and *Murray*, the courts allowed the assertion of a new value defense when the new value had been paid as a result of an authorization in a critical vendor order entered early in the life of the Chapter 11 case. *See In re Phoenix Rest. Group*, 373 B.R. at 546–549; and *In re Murray, Inc.*, 2007 WL 5595447 (Bankr. M.D.Tenn.2007). The court in *Commissary Operations* expressed concern that if the allowance of a § 503(b)(9) claim was viewed as a bar to the assertion of the new value defense while the allowance of reclamation claims was not, then critical vendors, whose claims were given priority status via court orders, would be given better treatment than § 503(b)(9) claimants, whose claims are statutorily favored.

Payment pursuant to a critical vendor order differs markedly from the statutory priority accorded to § 503(b)(9) claims. An order designating an unsecured creditor as a "critical vendor" accords the debtor-in-possession a great deal of latitude in negotiating the terms and conditions of "critical vendor" status while conditioning the designation as a "critical vendor" on the creditor's agreement to provide post-petition credit to the debtor-in-possession. *See, e.g., In re Phoenix Rest. Group*, 373 B.R. at 544–545 (describing how parties negotiated for critical vendor terms). One of the conditions that can be negotiated by the parties and incorporated into the order is how to deal with the potential preference liability of a critical vendor creditor, which can ensure that the value received by the debtor-in-possession is sufficient to justify the favored treatment. *Zenith Industrial and the Critical–Vendor Preference Defense: Being a Critical Vendor Does Not Pay What It Used To*, 24–3 ABIJ 32, 33 (April 2005); *see also* Geoffrey S. Goodman & Derek L. Wright, *Is the "Debtor–in–Possession" Not the "Debtor"? Post-petition Transfers and the Subsequent New–Value Defense*, 25–7 ABIJ 14, n. 2 (September 2006). It should also be noted that, since the Seventh Circuit's *Kmart* decision that developed a stringent test for determining whether a vendor is critical, parties seeking to use critical vendor orders have extensive challenges to overcome. *See In re Kmart Corp.*, 359 F.3d 866, 871–874 (7th Cir.2004); *Down, but Not Out: The Status of Critical Vendor Payments Post–Kmart*, 23–5 ABIJ 26 (June 2004); and *Zenith Industrial and the Critical-vendor Preference Defense: Being a Critical Vendor Does Not Pay What It Used To*, 24–3 ABIJ 32, 33 (April 2005) ("Bankruptcy courts are increasingly reluctant to grant such broad protections.").

It is appropriate to distinguish between payments pursuant to § 503(b)(9) claims and payments pursuant to critical vendor orders. A pre-petition debtor could not use the power and protection of the Bankruptcy Court to negotiate terms on goods provided within the § 503(b)(9) period the way a post-petition debtor can negotiate for terms on critical vendor orders. And, of course, a bankruptcy court may decline to approve payment of pre-petition obligations to critical vendors. Section 503(b)(9) does not allow such a distinction.

To evaluate the reasoning in *Phoenix Restaurant Group*, the Court must first consider the two prevailing approaches to determining whether a creditor is entitled to the new value defense. The first approach is the "remains unpaid" approach. *In re Pillowtex Corp.*, 416 B.R. 123, 126–

127 (Bankr.D.Del.2009). The Eleventh Circuit has been characterized, together with the Third Circuit and the Seventh Circuit, as holding that the new value must remain unpaid in order for it to be effectively used by the creditor to offset an otherwise avoidable transfer. *Id.* (quoting Noah Falk, *Section 547(c): The Subsequent New Value Exception Defense to Preferences,* 2004 ANN. SURV. OF BANKR.LAW PART I, § Q (Norton October 2004)). The remains unpaid approach, which the court rejects in *Phoenix Restaurant Group,* is in contrast to the "subsequent advance" approach. *In re Phoenix Rest. Group, Inc.,* 373 B.R. at 547–548. The subsequent advance approach has been adopted by the Fourth, Fifth, and Ninth Circuits and requires that the new value not have been paid by or secured by an unavoidable transfer, which essentially follows the text of the statute. *In re Pillowtex Corp.,* 416 B.R. at 126–127 (quoting Noah Falk, Section 547(c): The Subsequent New Value Exception Defense to Preferences, 2004 ANN. SURV. OF BANKR.LAW PART I, § Q (Norton October 2004)).

The reasoning in *Phoenix Restaurant Group* supports the conclusion that payment of § 503(b)(9) claims should be used to deplete a new value defense even if payments via critical vendor orders may not. All the post-petition payments at issue in *Phoenix Restaurant Group* were payments pursuant to a critical vendor order. *See In re Phoenix Rest. Group,* 373 B.R. at 545–546. The critical vendor order provided that payments made pursuant to that order would be applied first to the creditor's reclamation claim. *Id.* at 545. The court then held that post-petition payments generally could not be used to deplete new value, but that reclamation claims could. *Id.* at 547–548. Thus, two payments made under the same critical vendor order in that case could have different effects on the creditor's new value

defense: payments pursuant to the critical vendor order that went to the creditor's reclamation claim would deplete the creditor's new value defense, whereas later payments unrelated to the reclamation claim would merely be post-petition payments and would not deplete the creditor's new value defense. The distinction in *Phoenix Restaurant Group* between post-petition payments generally and payments made on reclamation claims is the result of the court's rejection of the remains unpaid approach.

Despite the Eleventh Circuit's categorization by other courts as an adopter of the remains unpaid approach, it is unclear whether the Eleventh Circuit officially has adopted that approach. A careful look at the Eleventh Circuit authority on the new value defense shows that its holding is not at odds with the subsequent advance approach. The issue before the Eleventh Circuit in *Jet Florida System* was whether a landlord had provided new value to the debtor by continuing to make leased premises available to the debtor for the debtor's use. *In re Jet Fla. Sys. Inc.,* 841 F.2d 1082, 1083 (11th Cir.1988). The trial court determined that the debtor had discontinued use of the premises and vacated the space some 19 months before filing for bankruptcy and substantially prior to the transfer by the debtor to the landlord that was the subject of the preference action. *Id.* at 1082. The Eleventh Circuit determined that no new value had been given. *Id.* at 1084. The Court quotes the precise language of § 547(c)(4) and then states:

> This section has been generally read to require: (1) that the creditor must have extended the new value after receiving the challenged payments, (2) that the new value must have been unsecured, and (3) that the new value must remain unpaid. *See e.g., In re Fulghum,* 45 B.R. at 119; *In re Keydata Corporation,*

37 B.R. 324, 328 (Bankr.D.Mass.1983); *In the Matter of Bishop,* 17 B.R. 180, 183 (Bankr.N.D.Ga.1982).

*Id.* at 1083. It is the description of the third requirement that led to the categorization of the Eleventh Circuit as being categorized as in the remains unpaid camp rather than the subsequent advance camp. The issue in Jet Florida System, however, did not involve a determination of the meaning of § 547(c)(4)(B), which is at issue here. Indeed, the language used by the Court in Jet Florida System to describe the third requirement is best viewed as shorthand for the text of § 547(c)(4), which the Court had quoted in full earlier.[3]

If the Eleventh Circuit were to fully embrace the remains unpaid approach, it is clear that the post-petition payment of SPI's § 503(b)(9) claim would deplete SPI's new value defense. Under the subsequent advance approach, the reasoning in *Phoenix Restaurant Group* still supports treating fully funded § 503(b)(9) claims like reclamation claims and unlike critical vendor payments because § 503(b)(9) claims deny the debtor and the debtor's estate the uninhibited use of new value. For all of the above reasons, it is appropriate to treat fully funded § 503(b)(9) claims like reclamation claims in § 547 actions.

## B. Policy Considerations

■■■ The essence of the new value defense is to preserve the policy objectives underlying preference provisions of the Bankruptcy Code. "The first objective is to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse." *In re Jet Fla. Sys., Inc.,* 841 F.2d at 1083; *see also In re Phoenix Rest.*

*Group, Inc.,* 373 B.R. 541, 547 (M.D.Tenn. 2007), *In re Commissary Operations, Inc.,* 421 B.R. 873, 879 (Bankr.M.D.Tenn.2010), *In re Gold Coast Seed Co.,* 30 B.R. 551, 553 (9th Cir. BAP 1983), and *In re Kroh Bros. Dev. Co.,* 930 F.2d 648, 650 (8th Cir.1991). "Another related objective of this section is to promote equality of treatment among creditors." *In re Jet Fla. Sys., Inc.,* 841 F.2d at 1083; *see also In re Kroh Bros. Dev. Co.,* 930 F.2d at 650; *and see generally* H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–79, 372–374 (1978), *reprinted in* 1978 *U.S.Code Cong. and Admin. News,* pp. 5785, 5963, 6138–6140, 6328–6330. The new value exception fosters these objectives because it limits the defense to the extent by which the bankruptcy estate has been enhanced by the creditor's actions. *See, e.g., In re Kroh Bros. Dev. Co.,* 930 F.2d at 654 ("The availability of the defense, then, depends on the ultimate effect on the estate"); *and In re Jet Fla. Sys., Inc.,* 841 F.2d at 1084 ("Thus, courts have generally required a transfer which fits within the subsequent advance exception to provide the debtor with a material benefit"). If the estate is not enlarged, no new value has been given. Thus, SPI's delivery of goods to Debtor pre-petition enlarged the Debtor's estate. Upon full payment to SPI, the Debtor's estate is no longer enlarged by the delivery. Therefore, SPI has no new value for which it has yet to receive full credit and should not be entitled to the new value defense.

*Commissary Operations* addresses the issue of which approach better fosters the policies behind the new value defense. 421 B.R. at 879. The Bankruptcy Court there states that creditors' knowledge of the availability of the new value defense encourages continued commerce with the

---

**3.** The Delaware Bankruptcy Court reached the same conclusion with respect to the authority relied upon in the Third Circuit for its

adherence to the "remains unpaid" test. *In re Pillowtex Corp.,* 416 B.R. at 127–128.

debtor. *Id.* This Court agrees. When a creditor ships goods pre-petition, however, the creditor never knows whether a bankruptcy will be filed within 20 days of receipt of the shipment. The creditor cannot, therefore, know that it may be able to assert a § 503(b)(9) claim. From the creditor's pre-petition perspective, there is no difference in incentive if the new value defense the creditor may have relied on is lost as a result of a § 503(b)(9) claim. Additionally, when an allowed § 503(b)(9) claim is guaranteed payment, as SPI's is here, the creditor will get paid in full for the value delivered to the debtor, and paying creditors in full for their claims is the ultimate method of encouraging them to continue trade with the debtor.

The second policy consideration—equal treatment of creditors—weighs heavily in favor of denying new value credit for allowed and paid § 503(b)(9) claims. Allowing BOTH new value credit and payment of the § 503(b)(9) claim elevates the claim of that creditor and results in double payment to that creditor. The estate then must pay the allowed administrative claim and would be unable to recover a preference payment that would otherwise be available for distribution to other creditors.

The case before the Court involves a § 503(b)(9) claim that has been allowed and is fully funded. If the estate were administratively insolvent, there may be no basis to hold that the claim was paid and the decision of the Court might be different. Under the facts presently before the Court, however, it would be inequitable and contrary to the statute to allow the new value defense to be used when the creditor has been paid in full, out of the debtor's estate, for the new value shipments. The preference period only involves transfers by the debtor that occur pre-petition, but the defense of § 547(c)(4) does not limit itself to the pre-petition period. Indeed, the requirements for making out a *prima facie* case for preference recovery include a determination of the extent of payment a creditor would receive in a Chapter 7 case. Post-bankruptcy facts are thus required for proper consideration of § 547 recovery actions. The holder of an administrative claim in a Chapter 7 case—even one created post-petition by § 503(b)(9)—is treated differently than other unsecured creditors. That post-petition fact may impact whether a trustee is able to make out a *prima facie* case under 11 U.S.C. § 547(b)(5).

## IV. CONCLUSION

A creditor that delivered goods to the debtor pre-petition is not entitled to the new value defense under § 547(c)(4) when that creditor has been paid in full by a § 503(b)(9) claim. This is the same treatment provided to reclamation claimants. A § 503(b)(9) claim is like a reclamation claim in that it is entitled to a higher status than other claims. A fully funded § 503(b)(9) claim also enjoys the same level of security as a reclamation claim. Finally, for each of these claims, the creditor is paid in full for the value it delivered to the estate, which means that the estate was not enlarged by the transaction. For these reasons, it is appropriate to treat fully funded § 503(b)(9) claims similarly to reclamation claims.

Denying a creditor the new value defense when the creditor's § 503(b)(9) claim is paid in full and is for the same goods for which the creditor seeks new value is the best way to foster the policies behind the new value defense. The new value defense may encourage the creditor to continue extending credit to a financially troubled entity and the creditor is rewarded with the full payment of its claims. Secondly, providing a creditor with full payment of its § 503(b)(9) administrative claim and allowing the estate to recover preference

payments in full is the best way to promote the equal treatment of creditors because it gives the § 503(b)(9) credit full value for its claim, but only does so one time. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment is **DENIED.**

The Clerk is directed to serve a copy of this Order on Plaintiff, counsel for Plaintiff, Defendant, and counsel for Defendant.