**In re NEWS PUBLISHING COMPANY, Debtor.**

**No. 13–40002–MGD.**

United States Bankruptcy Court, N.D. Georgia, Rome Division.

Feb. 5, 2013.

J. Nevin Smith, Smith Conerly LLP, Carrollton, GA, for Debtor.

Martin P. Ochs, Office of the U.S. Trustee, Atlanta, GA, U.S. Trustee.

### *ORDER GRANTING IN PART AND DENYING IN PART MOTION TO PAY CRITICAL VENDORS*

MARY GRACE DIEHL, Bankruptcy Judge.

This matter came on for hearing on January 30, 2013, in Rome, Georgia, on Debtor's Motion for an Order Authorizing, But Not Directing, Payment of Pre-petition Claims of Critical Vendors ("Motion"). (Docket No. 14). In support of the Motion, Debtor filed an Affidavit and Supplemental Affidavit of Burgett H. Mooney, III ("Supplemental Affidavit"). (Docket Nos. 16, 50). United Community Bank, an unsecured creditor in this case, filed a Response to the Motion ("Response"). (Docket No. 58).

At the hearing, Debtor offered the testimony of one witness, speaking on behalf of Etowah Employment Innovations ("Etowah"), and recited more facts with respect to Southern Lithoplate. Debtor also proffered the testimony of its President, Burgett H. Mooney, III ("Mr. Mooney"). After considering the documents filed with the Court and the testimony offered at the hearing, the Court ruled orally that the Motion would be denied except that the Court would authorize payment of Etowah's pre-petition claim to the extent of $50,000.00, which would cover the portion of the claim relating to payment of employees. The Order was effective as of the time of the hearing.

## I. Background

Debtor is a news and information corporation, publishing newspapers and various publications, operating a printing business, and operating several websites. The Motion seeks authority to pay the pre-petition claims of certain critical vendors ("Critical Vendors") pursuant to 11 U.S.C. §§ 105(a), 363(b), 364, 503(b)(9), 507(a)(2), and the doctrine of necessity. The creditors designated as Critical Vendors are comprised of three groups: (1) supply companies that provided supplies and equipment for Debtor's printing press; (2) service companies, that provided maintenance and repairs for Debtor's printing press; and (3) personnel companies, that provided temporary employees to Debtor.

In the Motion, Debtor alleges that nonpayment of these claims would materially interfere with Debtor's operations or there is no reasonable alternative source for the various goods or services. Debtor also states that absent payment, the Critical Vendors would likely refuse to continue in business with Debtor or would continue but with unreasonable credit terms. Debtor conditioned payment of each Critical Vendor upon agreement that they continue in business with Debtor according to the trade terms in effect before the petition date. Debtor asserted that there would be

a $200,000 cap to pay these claims, but reserved the right to increase that amount. The Supplemental Affidavit included a chart listing 16 specific Critical Vendors, the nature of the debt, the amount of the debt, and the reason the vendor is critical. The Response asserted that Debtor had failed to satisfy the stringent requirements of *In re Kmart Corp.*, 359 F.3d 866 (7th Cir.2004), and was unjustifiably seeking payment of some unsecured creditors while neglecting to pay others similarly situated.

## II. Discussion

*Kmart* rejected the notion that 11 U.S.C. §§ 105(a), 364(b), 503, or the doctrine of necessity, could form the basis for a court order authorizing payment of critical vendors. *In re Kmart Corp.*, 359 F.3d at 871. However, the Court recognized 11 U.S.C. § 363(b)(1) as possible authority for granting such relief. That section provides that the debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1).

■ Even if there is a statutory basis for issuing critical vendor orders, the debtor must still provide a sufficient evidentiary basis for such relief. The foundation of a critical vendors order is that unpaid vendors will refuse to deal with the debtor, and as a result, the debtor will not be able to continue in business. Paying such vendors is a better option for even the disfavored creditors because it will mean the debtor stays in business and is more likely to be able to pay the disfavored creditors. *In re Kmart*, 359 F.3d at 872.

■ In order to prove that these circumstances exist, a debtor must provide sufficient evidence that: (1) the payments are necessary for reorganization; (2) the critical vendors will otherwise refuse to do business with the debtor; and (3) that

disfavored creditors will be as well off with the critical vendor order than they would have been without it. *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 16 (Bankr.M.D.Fla.2005). *Kmart* developed a "stringent test for determining whether a vendor is critical, [and] parties seeking to use critical vendor orders have extensive challenges to overcome." *In re TI Acquisition, LLC*, 429 B.R. 377, 382 (Bankr. N.D.Ga.2010).

### A. Claims Held by Vendors Other Than Etowah or Southern Lithoplate

■ Because Debtor offered evidence at the hearing specific to Etowah and Southern Lithoplate, the Court will analyze those claims separately. With regards to all remaining claims, Debtor has not provided sufficient evidence to satisfy the *Kmart* test. The Supplemental Affidavit includes a chart purporting to describe why each of the sixteen vendors are critical. These descriptions list the goods and/or services provided by each vendor and detail reasons why that particular arrangement is beneficial to Debtor, and in some cases, why there might be risk or negative consequences to ending the relationship. However, Debtor does not, for any of the vendors, provide a reason why the vendor is critical, as opposed to just beneficial, important, or preferred.

The Supplemental Affidavit does not allege that the vendors will refuse to do business with Debtor if their pre-petition debt is not paid nor that payment of a particular vendor is necessary for reorganization. Additionally, of the sixteen vendors, seven were owed $533.64 or less, and the Court was not persuaded by any of the evidence presented by Debtor that a creditor who is owed a relatively nominal amount would refuse to continue in a cash

on delivery or cash in advance arrangement with Debtor.

At the hearing, Debtor's attorney proffered the testimony of Mr. Mooney. His proffer was that Debtor and/or Mr. Mooney had reached out to all creditors and that "some" have said that they would not continue in business with Debtor if not paid on their pre-petition claims. This vague and generalized statement was unsubstantiated by any other evidence presented at the hearing, other than with regards to the Etowah claim discussed below. This proffer was not sufficient to satisfy *Kmart's* stringent test.

## B. Etowah's Claim

■ At the hearing, Layton Roberts ("Mr. Roberts"), President of Etowah, the holder of the largest pre-petition claim among the designated critical vendors, testified as to Etowah's relationship with Debtor. Etowah is a staffing company that provides Debtor with workers who perform a range of jobs including deliveries, dock workers, and mail room workers. Mr. Roberts stated that although the supplemental affidavit recited a $72,151.14 debt owed to Etowah, the correct amount was approximately $77,000.00. Of that amount, approximately 30% was gross profit to Etowah, and the remaining 70%, or approximately $50,000.00, was paid to employees. The debt owed to Etowah was incurred during the approximate six to seven weeks prior to the petition date. Mr. Roberts testified that he believed Etowah was Debtor's vendor of choice because Etowah provides Debtor with a reduced worker's compensation rate and is also able to provide Debtor with seasonal workers; further, the employees it provides are specialized newspaper workers.

However, Mr. Roberts also testified that he did not know whether such specialized employees could be obtained from another employment agency. Mr. Roberts stated that some of the employees were formerly employed by Debtor, and also admitted that were its employees to stop working for Etowah, they could at least hypothetically be re-hired by Debtor. The reason given by Mr. Roberts as to why Etowah would not continue to deal with Debtor if its pre-petition debt went unpaid was essentially that the unpaid amount would result in Etowah going out of business. The credibility of this statement is dubious considering that Mr. Roberts further testified that Debtor provides only 10% of its business, that it has 40 to 50 other clients, and that it had already been paid a portion of the debt by factoring its invoices. Regardless of the veracity of the statement, Mr. Roberts' testimony did not satisfy the Court that payment of this vendor was necessary to Debtor's reorganization. Specifically, Debtor could re-hire its former workers or could seek the services of an alternative staffing agency.

That being said, the Court will allow payment of $50,000.00 of Etowah's claim, which represents the portion owing to employees. Although these employees were not employed by Debtor, they were the functional equivalent of Debtor's employees. Had they been actual employees of Debtor, their claims would have been entitled to priority status under 11 U.S.C. § 507(a)(4)(A). Thus as priority creditors, general unsecured creditors would not have been disadvantaged by their payment, albeit at an earlier time. Additionally, courts often authorize payment of pre-petition wages prior to plan confirmation as a business necessity. *E.g. In re Equalnet Communications Corp.*, 258 B.R. 368, 370 (Bankr.S.D.Tex.2000); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–7 (Bankr.S.D.N.Y.1989). Because the Etowah employees were the functional equivalent of Debtor's employees, their pre-peti-

tion claims deserve disparate treatment from those attributed to the other Critical Vendors, and the Court will authorize Debtor to pay Etowah $50,000.00, corresponding to the amount owed the employees.

### C. Southern Lithoplate's Claim

■ Southern Lithoplate holds the second largest pre-petition claim among the designated critical vendors. This vendor supplies Debtor with printing plates that are specific to machinery also supplied by Southern Lithoplate. Because Debtor could not continue to use this machinery and also switch to an alternate plate supplier, Debtor asserts that Southern Lithoplate is a critical vendor. However, Debtor's Supplemental Affidavit identifies an alternate supplier—Kodak, noting that the Southern Lithoplate plates are $1.00 cheaper. Identification of an alternate supplier leads the Court to believe that switching both machines and corresponding plates to a different vendor is possible. Even if a switch is costly, Debtor did not state that this increased cost could not be feasibly met. Although hinted at, no specific testimony was offered that Southern Lithoplate would not continue in business with Debtor if not paid. Even if Southern Lithoplate made such a demand on Debtor, this Court would first need to consider whether Southern Lithoplate's actions constituted a violation of the automatic stay provision of 11 U.S.C. § 362(a)(6). Debtor has not satisfied the *Kmart* test with regards to Southern Lithoplate's pre-petition claim.

### III. CONCLUSION

Debtor did not provide sufficient evidence to demonstrate that the Critical Vendors are actually critical. Debtors did not show that there were no alternatives to using each particular Critical Vendor. To allow better treatment of some creditors than others similarly situated, without clear justification, would disrupt a fundamental bankruptcy purpose—providing a time to stop all collection efforts, gather the estate's assets, and distribute those assets according to the priorities of the Bankruptcy Code, so that creditors can be paid in a fair and orderly way. With the exception of the $50,000.00 payment to Etowah, the requested relief will be denied. Accordingly, it is

**ORDERED** that Debtor's Motion for an Order Authorizing, But Not Directing, Payment of Pre-petition Claims of Critical Vendors is **DENIED** except that the Motion is **GRANTED** as to $50,000.00 of Etowah Employment Innovations' claim, relating to employee wages.

The clerk is directed to serve a copy of this Order upon Debtor, Debtor's attorney, the U.S. Trustee, and all creditors.